Filed 6/24/25  P. v. Davis CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DEONTAY MARQUIS DAVIS,<br><br>    Defendant and Appellant. | D085945<br><br><br>(Super. Ct. No. FSB19000830) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Cheryl C. Kersey, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Deontay Marquis Davis of committing four armed robberies and one assault with a deadly weapon.  The jury found true firearm enhancement allegations as to each robbery count, and the court found true

gang enhancement allegations as to each count and two prior strike allegations. The same jury also convicted another defendant, Christopher Jacks, of committing one of the armed robberies with Davis, but the jury did not reach a verdict on two separate counts of robbery alleged only against Jacks.

The trial court denied Davis's motion to dismiss prior strike allegations and sentenced Davis under the "Three Strikes" law to a total term of 170 years to life.

On appeal, Davis contends: (1) the trial court erred by denying his motion to sever his trial from that of other defendants; (2) the court abused its discretion by declining to dismiss either of Davis's prior strikes; and (3) his sentence violates the federal and state constitutions' prohibition against cruel and/or unusual punishment. Finding no error, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On February 7, 2019, A.P. withdrew $2,000 from a bank. When she reached her next destination, Davis, armed with a gun, and Jacks approached her, blocking her passage. Jacks said, "Give me the envelope, Bitch," and Davis threatened to shoot A.P. They forcefully took A.P.'s purse with the money inside and left the scene.

On February 13, 2019, Davis, holding a gun, approached Y.R. in a swap meet parking lot, took her purse, told her to get onto the ground, and threatened to shoot her if she got up. Davis's companion approached Y.R.'s husband, M.S., and attempted to take his money. M.S. fought back until Davis came over with the gun and told M.S. to get on the ground. Davis and his companion took M.S.'s money and car keys.

2

Also on February 13, 2019, D.B. withdrew money at the counter of a Bank of America. A security camera at the bank showed Davis in line behind D.B. while he withdrew the money. After D.B. left the counter and Davis had a brief exchange with the bank teller, Davis followed D.B. out of the bank. At approximately 11:44 a.m., D.B. and his companion, P.M., left the bank parking lot and drove to a supermarket. D.B. parked his vehicle in the supermarket parking lot at approximately 11:58 a.m. Davis's vehicle appeared in the parking lot shortly thereafter. As D.B. and P.M. exited their vehicle, Davis, armed with a gun, and another individual approached. Davis took a bag of money from D.B. while the other individual took P.M.'s purse. The perpetrators then returned to Davis's vehicle to leave the parking lot.

R.S. witnessed the robbery of D.B. and P.M. and tried to get the license plate number of Davis's vehicle as it tried to leave the scene. The vehicle hit R.S., who sustained a concussion and a broken rib.

Based on these incidents, the prosecution charged Davis with four counts of robbery (Pen. Code,[1] § 211) and one count of assault with a deadly weapon (§ 245, subd. (a)(1)), initially in three separate complaints. The prosecution further alleged: gang enhancements (§ 186.22, subd. (b)(1)(B), (C)) as to all counts; personal use of a firearm enhancements (§ 12022.53, subd. (b)) as to each robbery count; two prior serious felony convictions (§ 667, subd. (a)(1)); and two prior strike convictions (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)). His prior strikes arose from: (1) a November 2015 guilty plea of accessory after the fact (§ 32 with a § 186.22, subd. (b)(1) gang enhancement) and possession of a stolen firearm (§ 25400, subd. (c)(2)), and (2) a June 2016 guilty plea to first degree residential burglary (§ 459).

---

[1]    Undesignated statutory references are to the Penal Code.

The prosecution charged Jacks for the February 7, 2019, robbery in the same complaint as Davis and separately charged Jacks with committing two other armed robberies on February 11, 2019.

A third defendant was also charged with committing the February 7, 2019 robbery in the same complaint as Davis and Jacks.

The prosecution moved to consolidate the charges against Davis, Jacks, and the third defendant for trial, contending consolidation was proper under section 954 because: (1) the crimes were of the same class, as robberies and attempted robberies using handguns; (2) the same gang evidence applied, including that the defendants were members of the same criminal street gang, the California Gardens Crips, and committed a series of robberies to fund a gang war; (3) no prejudice would result because the cases were equally strong and the defendants were gang members; and (4) judicial economy supported consolidation.

The defense opposed the prosecution's motion and moved to sever Davis's trial from the other defendants. Because of the multiple charges not involving Davis, counsel argued, he would suffer prejudice and the jury would be confused.

The trial court granted the prosecution's motion to consolidate and denied Davis's motion to sever his trial. The court reasoned: (1) each of the crimes involved the same gang, the same purpose to fund a gang war, and the same robbery scheme; (2) the same section 1101, subdivision (b) evidence would be involved; (3) the crimes were of the same class; (4) there would be no undue prejudice; and (5) the jury would not be confused, but instead well-informed from considering the entire spectrum of evidence. The resulting consolidated information alleged eight counts: one robbery count against all three defendants, three additional robbery counts and one assault with a

4

deadly weapon count against only Davis, two additional robbery counts against only Jacks, and one additional robbery count against only the third defendant. Prior to trial, the third defendant pled guilty and agreed to testify at trial.

At trial, that defendant and another witness, both former members of the California Gardens Crips criminal street gang, testified. They provided evidence that: Davis and Jacks were members of the California Gardens Crips; the gang obtained money through robbery to purchase weapons to fight with rival gangs; and Davis, Jacks, and others met together to plan such robberies. In the robbery scheme, one witness explained that he would enter a bank to look for customers who withdrew a lot of money. He would then join Davis and Jacks, who were waiting in a car outside the bank, to follow and rob the target.

After hearing evidence regarding the incidents and the gang evidence, the jury convicted Davis on all five counts and found the firearm enhancements true. The court later found true the gang and prior conviction allegations. Additionally, the court found multiple aggravating circumstances in Davis's commission of the crimes: planning, sophistication, or professionalism; violent conduct indicating a serious danger to society; and numerous prior convictions.

The jury convicted Jacks of the robbery he committed with Davis but did not reach a verdict on the other two robbery counts alleged against him.

At sentencing, Davis moved to dismiss an allegation of a prior strike conviction under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*). In support of the motion, he argued: he was young, at ages 24 and 25, at the time of the prior offenses; the first offense would not have been a strike without the gang enhancement; the prior offenses were "serious but

not violent" and not listed in section 667.5; and he showed remorse by wanting to take a plea offer by the People, but it had been withdrawn by that time.

The trial court denied Davis's *Romero* motion, reasoning that Davis "always [went] big" in committing the crimes, he was not a youthful offender, he had the opportunity to see the error of his ways after the strikes and prison time, and he committed these offenses shortly after his release from prison, demonstrating that criminal activity was "a way of life" for him. The court sentenced Davis to 125 years to life plus 45 years, consisting of consecutive 25 years to life for each of the five counts, four consecutive 10-year terms for the firearm enhancements, and one consecutive five-year term for the gang enhancement on the assault with a deadly weapon count. The court also imposed and stayed the 10-year gang enhancements and two five-year prior serious felony enhancements for each count. The court highlighted Davis's targeting of vulnerable victims including the elderly, criminal sophistication, pattern of regular criminal conduct of increasing severity, committing the crimes while armed, and absence of remorse.

DISCUSSION

A. *Severance*

Davis first contends the trial court abused its discretion and violated his right to due process by denying his motion to sever his trial from his codefendants. He reasons that the offenses occurred on different occasions, in different locations, with different victims, and that not all of the charges included Davis. We conclude the court did not abuse its discretion or violate Davis's due process rights by declining to sever charges and defendants.

6

1. *Joinder of Crimes*

   Davis cites to section 954, which governs the joinder or severance of charges in pleadings. Section 954 permits the prosecution to charge in a single pleading and the court to consolidate separate pleadings involving "two or more different offenses connected together in their commission . . . or two or more different offenses of the same class of crimes or offenses." Offenses are connected together in their commission " ' " 'when they are . . . linked by a " 'common element of substantial importance,' " ' " ' " like motive or intent. (*People v. Westerfield* (2019) 6 Cal.5th 632, 686.) " 'Offenses of the same class are offenses which possess common characteristics or attributes.' " (*People v. Landry* (2016) 2 Cal.5th 52, 76.) The court, however, retains "discretion [to] order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately." (§ 954.) Even so, "[t]he law favors trying all charged offenses together." (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 746 (*Holmes*).)

   We review a trial court's order denying severance of charges for abuse of discretion. (*Holmes, supra*, 12 Cal.5th at p. 746.) Because of the preference for joinder, the court's discretion is broader than its discretion in determining admissibility of evidence. (*Ibid.*) "Where . . . the statutory requirements for joinder are met, the defendant must make a clear showing of prejudice to demonstrate that the trial court abused its discretion." (*Ibid.*) Our review of a court's exercise of discretion in denying severance of charges involves the consideration of four factors: " '(1) whether evidence of the crimes to be jointly tried is cross-admissible; (2) whether some charges are unusually likely to inflame the jury against the defendant; (3) whether a weak case has been joined with a stronger case so that the spillover effect of

7

aggregate evidence might alter the outcome of some or all of the charges; and (4) whether any charge carries the death penalty or the joinder of charges converts the matter into a capital case.' " (*Ibid.*)

Davis concedes that the charges involved—all robberies or other offenses that occurred during the robberies—were of the same class. Thus, joinder was proper. Davis does not attempt to apply the section 954 factors, nor does he otherwise establish a clear showing of prejudice. Considering the factors, we cannot say that the court unreasonably denied severance. The gang evidence regarding the California Gardens Crips' robbery scheme was cross admissible to show motive for all robberies. (*See Holmes, supra*, 12 Cal.5th at pp. 746–747 [involving a series of gang motivated crimes].) The evidence of the February 7, 2019, robbery was applicable to both Davis and Jacks because they committed the crime together. Davis does not suggest, nor is it evident from the record that the separate charges against Jacks were inflammatory or particularly strong—indeed, the evidence proved insufficient to unanimously convince the jury. The final factor is not relevant as this case did not involve capital offenses.

2. *Joinder of Defendants*

The People raise section 1098, which governs the joinder and severance of defendants. This section provides that "two or more defendants [who] are jointly charged with any public offense . . . must be tried jointly, unless the court order[s] separate trials." Under this section, the court retains "discretion, [to] order separate trials 'in the face of an incriminating confession, prejudicial association with codefendants, likely confusion resulting from evidence on multiple counts, conflicting defenses, or the possibility that at a separate trial a codefendant would give exonerating testimony.' " (*People v. Avila* (2006) 38 Cal.4th 491, 574–575 (*Avila*).)

8

Section 1098, like section 954, evidences a preference for joint trials to promote efficiency and consistent verdicts. (*Holmes, supra*, 12 Cal.5th at p. 748.) "We review a trial court's denial of a severance motion for abuse of discretion based on the facts as they appeared at the time the court ruled on the motion. [Citation.] If the court's joinder ruling was proper at the time it was made, a reviewing court may reverse a judgment only on a showing that joinder " ' "resulted in 'gross unfairness' amounting to a denial of due process." ' " [Citation.] Even if the court abused its discretion in refusing to sever, reversal is unwarranted unless, to a reasonable probability, defendant would have received a more favorable result in a separate trial." (*Avila, supra*, 38 Cal.4th at p. 575.)

Davis raises, in a conclusory manner, likely jury confusion and association with Jacks as the reasons the trial court should have exercised discretion to sever his trial. The mere existence of multiple defendants and multiple robberies is insufficient to conclude that the court abused its discretion by declining to sever the trials. (See, e.g., *Holmes, supra*, 12 Cal.5th at pp. 734, 754 [concluding there was "little risk that evidence on multiple counts would engender confusion" even though one defendant was charged with an additional count of the same crime based on a separate incident].) The statutes exist to permit the joining of charges and defendants, and this case did not involve an overwhelming number of charges, amount of evidence, or complexity of evidence.

" ' "Prejudicial association might exist if 'the characteristics or culpability of one or more defendants [is] such that the jury will find the remaining defendants guilty simply because of their association with a reprehensible person, rather than assessing each defendant's individual guilt of the crimes at issue.' " ' " (*People v. Anderson* (2018) 5 Cal.5th 372, 386.) In

9

this case, the prosecution had independent evidence of Davis's involvement in the crimes from the victims and video surveillance, as well as independent evidence that he was a member of the gang. (See *Avila, supra*, 38 Cal.4th at p. 576.) Davis had potentially more negative characteristics and culpability here, facing more charges, the firearm allegations, and evidence that he threatened to shoot the victims.

Moreover, there is no reasonable probability that the result would have been more favorable to Davis had the court severed his trial. Given that the jury did not reach a verdict on Jacks's separate crimes, it is clear that the evidence against him had no bearing on how the jury viewed the case against Davis, who was convicted on all counts.

Nor has Davis established that joinder actually resulted in gross unfairness depriving him of due process. He does not point to any part of the trial that was unfair as a result of joinder, nor do we observe any prejudicial effects from joinder in the record. The defendants presented a unified front at trial, with both counsel arguing against the conviction of both defendants, and with no evidence of conflict between the two, blame on one another, or other negative effects from the joint trial resulting in unfairness.

B. *Romero Motion*

Davis next argues the trial court abused its discretion by denying his *Romero* motion because his prior strikes were "relatively nonserious" and occurred when he was a youth under California sentencing law (24 and 25 years old), and because he had admitted liability and demonstrated remorse by wanting to accept a withdrawn plea deal. We conclude the trial court did not abuse its discretion by denying his *Romero* motion.

Section 1385, subdivision (a) gives the trial court limited discretion, in the furtherance of justice, "to strike prior felony conviction allegations in

10

cases brought under the Three Strikes law." (*Romero, supra*, 13 Cal.4th at pp. 529–530.) However, " 'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).) Based on this sentencing requirement, "the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Id.* at p. 378.)

In evaluating a *Romero* motion, the court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

We review the trial court's refusal to strike a prior strike for abuse of discretion. (*Carmony, supra*, 33 Cal.4th at p. 375.) The appellant bears the burden " ' "to clearly show that the sentencing decision was irrational or arbitrary," ' " otherwise " ' "the trial court is presumed to have acted to achieve legitimate sentencing objectives." ' " (*Id.* at pp. 376–377.) We may not substitute our judgment for that of the trial court or "reverse[ ] merely because reasonable people might disagree." (*Id.* at p. 377.)

11

"[A] trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances," such as "where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss." (*Carmony, supra*, 33 Cal.4th at p. 378.) Only in "an extraordinary case—where the relevant factors . . . manifestly support the striking of a prior conviction and no reasonable minds could differ" would "the failure to strike . . . constitute an abuse of discretion." (*Id.* at p. 378.)

Under this standard, we cannot conclude the trial court abused its discretion by declining to strike Davis's prior strike conviction. The court " 'balanced the relevant facts' " available to it and " 'reached an impartial decision in conformity with the spirit of the law.' " (*Carmony, supra*, 33 Cal.4th at p. 378.) The record supports the trial court's determination that Davis fell within the spirit of the Three Strikes law. His first two strikes occurred in relatively quick succession, in late 2014 and early 2016, separated largely by his incarceration. His first strike involved the California Gardens Crips gang. Shortly after his release from prison for his second strike, he resumed his criminal activity for the gang by committing the four armed robberies and assault in this case. (See *In re Large* (2007) 41 Cal.4th 538, 552 ["a return to crime after a recent release from prison" supports a court's decision not to strike a prior offense].)

Given the continuity of Davis's criminal activity when out of custody, the factors raised by Davis do not convince us that any reasonable court would determine this was an extraordinary case falling outside the Three Strike scheme. Davis fails to explain why or cite authority showing the nature of prior offenses—acting as an accessory to a felony with a gang enhancement and first degree residential burglary—were "relatively

12

nonserious" such that no reasonable judge would sentence him under the Three Strikes law under these circumstances. Although Davis was 24 and 25 years old at the time of the prior offenses, he continued his life of crime well past that age with this series of armed robberies—more serious crimes than he committed at a younger age. Moreover, Davis does not cite any authority suggesting that the commission of prior crimes at the ages of 24 and 25, though considered youthful for some purposes in sentencing, is an extraordinary circumstance taking a defendant outside the Three Strikes scheme. Finally, Davis's belated attempt to accept a plea deal fails to convince us that this is an extraordinary case where no reasonable minds could differ. We see no indication in the record that he sought to accept the plea deal due to remorse, nor may we substitute our judgment for that of the trial court, which determined that Davis was not remorseful.

C. *Cruel and Unusual Punishment*

Finally, Davis asserts his sentence violates state and federal prohibitions on cruel and unusual punishment as a life sentence for offenses in which no one was killed or injured. He further contends his sentence is contrary to the Legislature's sentencing changes reflecting a trend toward reducing excessive and disproportionate sentences, including section 1385, subdivision (c). Following existing case law, we conclude Davis's sentence was not cruel or unusual in violation of the federal or state constitutions.

The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishment. (U.S. Const., 8th Amend.) The Eighth Amendment forbids only sentences that are "grossly disproportionate" to the crime. (*Ewing v. California* (2003) 538 U.S. 11, 20.) This proportionality principle is narrow when applied in noncapital cases. (*Ibid.*)

The Court in *Ewing* upheld the general constitutionality of California's Three Strikes law. (*Id.* at p. 25.)

The California Constitution bars cruel or unusual punishment, which provides greater protection to defendants than the federal language. (Cal. Const., art. I, § 17; *People v. Haller* (2009) 174 Cal.App.4th 1080, 1092.) A punishment is cruel or unusual in California "if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424.) California courts examine three factors when determining whether a sentence is constitutionally disproportionate: (1) "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society"; (2) how the challenged penalty compares to "the punishments prescribed in the *same jurisdiction for different offenses* which, by the same test, must be deemed more serious"; and (3) how the challenged penalty compares to "the punishments prescribed for the *same offense in other jurisdictions* having an identical or similar constitutional provision." (*Id.* at pp. 425–427.) The nature of the offense depends on "the totality of the circumstances surrounding the commission of the offense in the case at bar, including such factors as its motive, the way it was committed, the extent of the defendant's involvement, and the consequences of his acts." (*People v. Dillon* (1983) 34 Cal.3d 441, 479.)

"Whether a punishment is cruel and/or unusual is a question of law subject to our independent review, but underlying disputed facts must be viewed in the light most favorable to the judgment." (*People v. Palafox* (2014) 231 Cal.App.4th 68, 82.) The defendant bears the " 'considerable burden' to show a punishment is cruel and unusual." (*People v. Meneses* (2011)

193 Cal.App.4th 1087, 1092–1093, citing *People v. Wingo* (1975) 14 Cal.3d 169, 174.)

Consistent with existing case law, we agree with the Attorney General that the imposition of five 25 years to life sentences for Davis's five violent felonies—four robberies committed with a gun and an assault committed using a vehicle—and five enhancements—one attached to each offense—was not unconstitutionally excessive. (See *People v. Sullivan* (2007) 151 Cal.App.4th 524, 570 (*Sullivan*) [upholding as constitutional a sentence of 210 years to life for six counts of robbery with two prior strike convictions]; *People v. Ayon* (1996) 46 Cal.App.4th 385, 397 (*Ayon*) [upholding as constitutional a sentence of 240 years for seven armed robberies and two attempted robberies], disapproved of on other grounds in *People v. Deloza* (1998) 18 Cal.4th 585.) The totality of the circumstances supports the proportionality of the sentence, given that Davis committed multiple serious crimes—a series of robberies using a deadly weapon, threatening to shoot some victims, for the purpose of funding further gang activity and, during one of the robberies, an assault with a deadly weapon causing injury to another. (*Sullivan, supra*, at p. 570 ["Commission of a series of robberies which included threatened acts of violence with a deadly weapon must be considered acts of a most heinous nature."].) Further, Davis "is not subject to multiple 25-years-to-life sentences merely on the basis of his current offenses alone, but also for his recidivist behavior." (*Id.* at p. 571.)

Courts in prior similar cases found no disproportionality as compared to other more serious offenses in California or the same offenses in other jurisdictions. (*Sullivan, supra*, 151 Cal.App.4th at pp. 570–573 ["Defendant has also failed to establish with any factual support that his sentence is excessively harsh in comparison to the punishment for more serious crimes in

15

this state." "We conclude, as have other courts when presented with essentially the same issue in similar contexts, that defendant has failed to establish his sentence is disproportionate when compared to recidivist statutes in other jurisdictions."]; *People v. Cline* (1998) 60 Cal.App.4th 1327, 1338 ["[A] comparison of California's punishment for recidivists with punishment for recidivists in other states shows that many of the statutory schemes provide for life imprisonment for repeat offenders, and several states provide for life imprisonment without possibility of parole. California's scheme is part of a nationwide pattern of statutes calling for severe punishments for recidivist offenders]."") Nor has Davis advanced any basis convincing us to diverge from that conclusion. (*Ayon, supra*, 46 Cal.App.4th at p. 399 ["The defendant has the burden of establishing that his punishment is greater than that imposed for more serious offenses in California and that similar offenses in other states do not carry punishments as severe."].)

The enhancements Davis is serving, one attached to each offense, do not transform his sentence into one that is grossly disproportionate or shocks the conscience, regardless of how the court would have applied section 1385, subdivision (c) had it been raised at sentencing.[2] Likewise, we are not persuaded that other recent sentencing reforms in different contexts render his sentence cruel or unusual. Davis fails to raise any specific scenarios in

---

[2] To the extent that Davis's discussion of section 1385, subdivision (c) is a separate argument that the trial court abused its discretion by declining to strike enhancements, we agree with the Attorney General that he forfeited that argument by failing to seek dismissal of the enhancements below. (*People v. Coleman* (2024) 98 Cal.App.5th 709, 724 ["Defendant's claim is forfeited for failure to request that the trial court strike the enhancements under section 1385."].) We will not consider Davis's cursory claim in his reply brief that trial counsel's failure to move to strike enhancements under section 1385, subdivision (c) constitutes ineffective assistance of counsel. (*People v. Mickel* (2016) 2 Cal.5th 181, 197.)

which those reforms would result in more serious crimes than Davis's receiving lesser punishment.

## DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

BUCHANAN, J.

KELETY, J.